William Thomas HAYNES *v.* STATE of Arkansas

CR 80-62                                602 S.W. 2d 599

Supreme Court of Arkansas
Opinion delivered July 7, 1980
Rehearing denied August 25, 1980

*E. Alvin Schay*, State Appellate Defender, by: *Jackson Jones*, Deputy Appellate Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Victra L. Fewell*, Asst. Atty. Gen., for appellee.

JOHN I., PURTLE, Justice. Appellant was convicted of possession of marijuana, possession of LSD with intent to deliver, and delivery of LSD. He was fined $1,000 and sentenced to one year in jail on the marijuana charge and was fined $15,000 and sentenced to the Department of Correction

for 20 years on each of the other two charges. The jail time merged with the Department of Correction sentences which were to run consecutively.

On appeal appellant urges three points for reversal. (1) The court failed to grant appellant's motion to suppress certain evidence. (2) The sentence resulted from passion and prejudice and was cruel and unusual. (3) The trial court failed to sentence appellant pursuant to the Youthful Offender's Act. We agree with appellant's first contention but disagree with the second and third arguments.

Appellant lived with his father in room 114 of the Apple Valley Inn in Harrison, Arkansas, at the time the events considered here occurred. Other persons occupied room 116. The police became suspicious that drugs were being distributed from the motel and began an investigation. Apparently, room 116 received most of the visitor traffic, but there was some testimony that several people were in and around rooms 115 and 114, also.

About 8:00 p.m. on April 23, 1978, the officers decided to make a controlled purchase through a reliable informant. The officers moved into an observation post from which they observed five people known to them, plus several more unknown to them, in and around room 116. Detective Post stated:

Well, they were all over, and, there were cars there and I can't remember what kinds of cars they were and all these individuals were outside and going inside room 116, back and forth and standing outside talking.

Sergeant Lucas testified that he observed the informant arrive on the scene at approximately 11:00 p.m. and that he saw the appellant emerge from room 114 and strike up a conversation with the informant in the parking lot. Shortly thereafter, the informant and the appellant entered room 116 where they stayed a few minutes, and the informant left. The informant later reported that he had been successful in buying drugs from the appellant. Although the record is silent, it is apparent that the purchase was completed in room 116.

Lucas further testified that the people he observed were in room 115 or 116 but not in room 114. All of the people he saw arriving and departing were from room 116. He also testified that after the informant and appellant left room 116, the appellant returned to room 114 where he resided with his father.

The officers then decided it was time to secure the area; and, on command, they charged the motel and kicked down the door of rooms 115 and 116. Room 115 was vacant and only two people were in room 116. After discovering appellant was in neither room, they proceeded to room 114 where they entered without permission and without a warrant. At this time, other officers were attempting to obtain a search warrant, however, it took approximately three and a half hours for the warrant to arrive. In the meantime, the officers moved appellant's father out of his own room and placed him in room 115 until the search warrant arrived. Appellant and at least one officer stayed inside room 114 for approximately three and a half hours. The officers admitted they did not have permission to enter room 114 as they were not there under friendly circumstances.

The evidence is in considerable dispute about what occurred while the officer remained in room 114 waiting for the search warrant, and it is uncertain when or if the appellant was arrested. Officer Post stated:

> I did not tell them they were under arrest, but I did advise the defendant of his rights. This was when I walked into room 114. I asked Officer Hutchinson if the defendant had said anything, and he said he had not.

The officer testified that after a considerable amount of discussion the appellant finally stated that the only drugs he had were in a dresser drawer and that appellant went to the dresser drawer, opened it, and got a container with the marijuana in it. The officer opened the canister, looked in and saw the marijuana, and told appellant to replace it in the drawer. After the search warrant arrived, about 3:00 a.m., the police took possession of the marijuana again, and, they also discovered LSD with a market value of $58.

The crucial question to be considered by the court is whether the evidence seized should have been supressed.

Arkansas Rules of Criminal Procedure, Rule 10.1(a), states:

> "Search" means any intrusion other than an arrest, by an officer under color of authority, upon an individual's person, property, or privacy, for the purpose of seizing individuals or things or obtaining information by inspection or surveillance, if such intrusion, in the absence of legal authority or sufficient consent, would be a civil wrong, criminal offense, or violation of the individual's rights under the Constitution of the United States or this state.

It seems quite clear that there was an intrusion into appellant's place of abode at the time of this "seizure." Since an intrusion without legal authority is a violation of one's individual rights under the Constitutions of the United States and the state of Arkansas, this visit amounted to an illegal intrusion or search. Rule 10.1(a) is nothing more than an explanation of a meaning of the word "search". The officers obviously were acting under color of authority and were on the appellant's property for the purpose of seizing individuals or things. There is no question there was no consent to this intrusion.

Arkansas Rules of Criminal Procedure, Rule 14.3, states:

> An officer who has reasonable cause to believe that premises or a vehicle contain:
>
> (a) individuals in imminent danger of death or serious bodily harm; or
>
> (b) things imminently likely to burn, explode, or otherwise cause death, serious bodily harm, or substantial destruction of property; or
>
> (c) things subject to seizure which will cause or be used

to cause death or serious bodily harm if their seizure is delayed;

may, without a search warrant, enter and search such premises and vehicles, and the persons therein, to the extent necessary for the prevention of such death, bodily harm or destruction.

It is quite clear that this was not an emergency search as defined by the above-quoted rule. We have always construed the Fourth Amendment to prohibit entry into one's home, without a warrant, for any reason; except, exigent circumstances have been determined to allow a warrantless intrusion. Absent exigent circumstances such an intrusion is not permitted. *Payton* v. *New York*, 445 U.S. 573, 100 S. Ct. 1371 (1980). We do not believe any provision of the constitution permits officers without a warrant to break down doors, to enter the premises of an individual, and to detain him for several hours while waiting for a search warrant. Using an old cliche, a man's home is his castle; and, it should be free from intrusion by outsiders, including the government and its officers. The United States Supreme Court has confirmed the statement that illegal entry into a person's home is the chief evil guarded against by the Fourth Amendment. *United States* v. *United States District Court*, 407 U.S. 297 (1972); *McDonald* v. *United States*, 335 U.S. 451 (1948).

In *Riddick* v. *New York*, 445 U.S. 573, 100 S. Ct. 1371 (1980), which is a companion case to *Payton* v. *New York*, supra, it was held that when the police entered a residence without a warrant and seized evidence, the evidence thus obtained was inadmissible. In both *Payton* and *Riddick*, the trial court and the appellate court refused to suppress the evidence obtained in these two cases. In *Payton* the police knocked on his door; and, when there was no response, they knocked in the door and seized a spent cartridge which was in plain view. In Riddick's case the police knocked on his door; and, when his young son opened the door, the police saw Riddick sitting in bed, entered his residence, and arrested him. Before permitting him to dress, they opened a chest of drawers and found narcotics and related paraphernalia which resulted in Riddick's arrest and aided in his conviction. Both of these

cases were reversed by the United States Supreme Court. It was held that the Fourth Amendment, made applicable to the states by the Fourteenth Amendment, prohibits police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest.

The opinion of the Court in *Payton* v. *New York*, supra, and *Riddick* v. *New York*, supra, is represented by the following statement:

> It is a "basic principle of Fourth Amendment law" that searches and seizures inside a home without a warrant are presumptively unreasonable. Yet it is also well-settled that objects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity. The distinction between a warrantless seizure in an open area and such a seizure on private premises was plainly stated in G. M. Leasing Corp. v. United States, 429 US 338, 354, 50 L Ed 2d 530, 97 S Ct 619:***

It is obvious that this case is controlling on the matter before us at this time.

We know of no statutory or other right which enables the officers to take the action which was described by Officer Hutchinson when he stated:

> I told him that he was under arrest for the sale of a controlled substance and advised him of his constitutional rights, per Miranda, and seized the room until the search warrant could arrive.

Certainly, seizing the room is as much of an invasion of privacy as searching the room. Admittedly, there was no search warrant; therefore, the search and the seizure prior to the receipt of the warrant were not authorized.

We are unable to say from the record that the sentence

was a result of passion or prejudice or that it was a clear abuse of the trial court's discretion. Also, we point out that the Youthful Offender's Act, Ark. Stat. Ann. § 43-2339 (Repl. 1977), is discretionary, and we find no abuse of that discretion.

Reversed and remanded.

FOGLEMAN, C.J., GEORGE ROSE SMITH and STROUD, JJ., dissent.

JOHN A. FOGLEMAN, Chief Justice, dissenting in part. I could accept a holding that the seizure of the marijuana in this case was the result of an unreasonable search and seizure, but I do not agree that the seizure of the LSD was the result of an unreasonable search. It was the fruit of a search pursuant to a search warrant which the officers were unable to produce until 34 hours after they knew there was a probable cause for a search of the motel room in which it was found. The officers who remained at the scene restrained themselves admirably except for the questionable episode relating to the marijuana. Perhaps the circumstances were not so exigent as to permit a search without a warrant, but Haynes did not have a constitutional right to flush his remaining inventory of LSD down the commode. Yet this is the unarticulated effect of the majority opinion. That is the only way that it can be said that the successful search pursuant to a proper warrant was the fruit of an unlawful intrusion.

In viewing this matter, it seems to me that the majority in making its independent determination of the reasonableness of the search, has given no weight whatever to the finding of the trial judge that the search was reasonable. The holding in *Payton* v. *New York & Riddick* v. *New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed. 2d 639 (1980), relied upon by the majority is strictly limited to arrests made in the absence of exigent circumstances. Throughout all the spate of its decisions during the past quarter of a century dealing with the Fourth Amendment warrant requirements in the light of what has been called the amorphous word, "reasonableness," the United States Supreme Court has con-

sistently recognized an exception to the warrant requirement in exigent circumstances, both in cases where a search was sustained as reasonable and where suppression was required because a warrantless search or seizure was unreasonable. See, e.g., *Johnson* v. *United States*, 333 U.S. 10, 68 S. Ct. 367, 92 L. Ed. 436 (1948); *McDonald* v. *United States*, 335 U.S. 451, 69 St.Ct. 191, 93 L.Ed. 153 (1948); *United States*, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); *United States* v. *Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96, L.Ed. 59 (1951); *Warden* v. *Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed. 2d 782 (1967) *Katz* v. *United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967); *Chimel* v. *California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L. Ed. 2d 685 (1969); *Chambers* v. *Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970); *Coolidge* v. *New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (1971); *Mincey* v. *Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed. 2d 290 (1978). In *Payton*, the court specifically recognized that a different result might have been reached had the state found exigent circumstances, which arguably existed. In *Riddick*, there was no suggestion of exigent circumstances. In *Warden*, it was said that neither entry nor search is invalid where the exigencies of the situation make the course of action taken by the police imperative. The fact that the contents of the place to be searched might never be found again is a pertinent consideration in determining the reasonableness of the police action. See *Chambers* v. *Maroney*, supra. It is universally recognized that the danger of destruction of evidence, particularly contraband, is one of the most important factors in considering whether the circumstances were sufficiently exigent that action without a warrant is reasonable. See *United States* v. *Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed. 2d 300 (1976); *Cupp* v. *Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed. 2d 900 (1973), and cases above cited.

There was evidence of exigent circumstances in this case. There was probable cause for the arrest of Haynes. The officers who arranged for the informant to purchase the controlled substance from Haynes proceeded immediately to obtain a search warrant and informed the state trooper, Hutchinson, a specialist in the enforcement of laws governing narcotics. Hutchinson said that he observed that a great many people were involved and many were leaving and he judged that the officers were running the serious risk of losing

other evidence and having dangerous drugs get out on the street, so he decided that he and the officers still present should "secure" the area. He said that after he had gone to room 116 and Sgt. Lucas to room 115, he proceeded to room 114, where he found the door ajar, knocked on it, identified himself as a police officer, and said that he wanted to speak to Tommy Haynes and that he was there for a drug investigation. Hutchinson said that, after hearing a voice saying, "I am Tommy Haynes. What do you want?", he entered the room, identified himself, and asked if the younger of two persons there was Tommy Haynes and, upon receiving an affirmative response, confirmed the identification by asking for the person's driver's license. Haynes testified that when he identified himself, Hutchinson asked him to step outside. He said that Hutchinson stated that he was conducting an investigation and had come to secure the area and that he (Haynes) responded, "Okay, go ahead." According to Hutchinson, he placed Haynes under arrest for sale of a controlled substance and advised him of his rights a few minutes later when Officer Post arrived. Hutchinson said his basic concern was putting the individuals under arrest and preventing any further disposition of the evidence.

In *Freeman* v. *State*, 258 Ark. 617, 527 S.W. 2d 909, we held that the state had failed to show exigent circumstances to justify the warrantless seizure of an automobile. We said that there was no evidence that there was any danger that people in an automobile, from which the accused was taken when arrested, might remove the vehicle from the premises before a warrant could be issued, but that if that danger did exist, no reason appeared why two officers, other than those who made the arrest but who were present when the arrest was made, could not have maintained a guard sufficient to prevent the removal of this evidence or why additional officers could not have been summoned to lend assistance in this respect. This was a clear recognition that circumstances that were not exigent might become so by subsequent developments.

In a narcotics case, it has been recognized that once the accused, who had recently made a sale to one making a "controlled buy" arranged by an undercover officer, saw the

police, there was a realistic expectation that a delay would only result in destruction of the evidence. *United States* v. *Santana*, supra. There a warrantless arrest and search were found reasonable. In *Michigan* v. *Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L. Ed. 2d 486 (1978), the court pointed out that its decisions had recognized that a warrantless entry by criminal law enforcement officers may be legal where there is compelling need for official action and no time to secure a warrant. The inquiry is a dual one—whether the actions of the officer were justified in their inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Cupp* v. *Murphy*, supra. A warrantless "search" must be strictly circumscribed by the exigencies which justify the intrusion. *Mincey* v. *Arizona*, supra.

In this case the evidence clearly showed that there were exigent circumstances to support the action of Hutchinson. A rather general exodus from the motel premises among the frequenters of room 116 and its environs commenced after the controlled buy. It became apparent to Hutchinson, whose expertise as a narcotics officers is not to be ignored, that there was a reasonable probability that Haynes would join the exodus, with or without his remaining inventory of LSD. If he took it, it would undoubtedly surface on the street. If he did not, there was a strong likelihood that it would have "gone down the drain." There certainly was a reasonable expectation that evidence would be destroyed, or that, in any event, it would never be found if the arrival of a search warrant was awaited. It was certainly reasonable to believe that there was a compelling need for official action in the form of an arrest and "securing the area" of the intended search. There was certainly a basis for finding that the actions of the officer were justified in their inception. Hutchinson carefully limited the intrusion by not actually conducting a search for evidence (contraband) until the search warrant arrived. There was an evidentiary basis for a finding that he did not extend his intrusion beyond the scope reasonably related to the initial intereference.

In its totally independent determination of the reasonableness of the officer's action, the majority has ig-

nored a basic factor of that review. We should give respectful consideration to the findings of the trial court and considerable weight in the resolution of evidentiary conflicts. *Harris* v. *State*, 244 Ark. 314, 425 S.W. 2d 293; *State* v. *Osborn*, 263 Ark. 554, 566 S.W. 2d 139. We should accord the trial court's findings such weight that we will not overturn them unless they are clearly against the preponderance of the evidence. *Degler* v. *State*, 257 Ark. 388, 517 S.W. 2d 515; *State* v. *Osborn*, supra. I respectfully submit that the majority has given no consideration to the findings of the trial court. I do not see how it can be said that the trial court's finding was clearly against the preponderance of the evidence. This decision will do nothing to counter the growing dissatisfaction with the exclusionary rule.

I would affirm the judgment.

I am authorized to state that Mr. Justice GEORGE ROSE SMITH and Mr. Justice STROUD join in this opinion.