The Honorable Ted E. Mullenix State Representative 200 Rolling Acres Drive Pearcy, AR 71964-9422
Dear Representative Mullenix:
This is in response to your request for an opinion regarding investigations of allegations of cruelty to animals pursuant to A.C.A. §§ 5-62-101—204 (1987 Cum. Supp. 1991). Your request refers to an individual in Garland County who is both a constable and the president of an animal welfare society. You state that the animal welfare society is organized as a non-profit corporation primarily for the purpose of the prevention of cruelty to animals. You also state that the society cooperates with city and county law enforcement agencies in investigating reports of abuse and neglect of horses. Your question has been paraphrased as follows:
 Does an individual, upon an allegation of animal neglect or abuse, either in his capacity as a constable or the agent of an animal welfare organization, have the authority to enter private property to examine allegedly neglected or abused animals, or must he first obtain a search warrant before going on to the property?
For the following reasons, it is my opinion that any individual who "acts under color of authority" must first obtain a search warrant before entering private property for the purpose of investigating an allegation of animal neglect or abuse, unless the search is one which falls within a recognized exception to the requirement of a warrant.[1]
Arkansas Rule of Criminal Procedure 10.1(a) defines a search as follows:
 [A]ny intrusion other than an arrest, by an officer under color of authority, upon an individual's person, property, or privacy, for the purpose of seizing individuals or things or obtaining information by inspection or surveillance, if such intrusion, in the absence of legal authority or sufficient consent, would be a civil wrong, criminal offense, or violation of the individual's rights under the Constitution of the United States or this state.
In my opinion, the examination of an allegedly neglected or abused animal falls within the definition of a search as an intrusion upon an individual's property for the purpose of obtaining information by inspection or surveillance.
Absent exigent circumstances, an intrusion into an individual's place of abode without a warrant is a violation of that individual's rights under the Constitutions of the United States and the State of Arkansas. Haynes v. State, 269 Ark. 506,602 S.W.2d 599, cert. denied, 449 U.S. 1066, 101 S.Ct. 795,66 L.Ed.2d 611 (1980). It is a "basic principle of Fourth Amendment law" that searches and seizures inside a home without a warrant are presumptively unreasonable. Id., citing Payton v. NewYork, 445 U.S. 573, 100 S.Ct. 1371 (1980) and Riddick v. NewYork, a companion case to Payton, 445 U.S. 573, 100 S.Ct. 1371
(1980).
Some exceptions to the requirement for a search warrant are set out in the Arkansas Rules of Criminal Procedure. Seegenerally A.R.Cr.P. 11 (search by consent); A.R.Cr.P. 12 (search incident to arrest); A.R.Cr.P. 14.1 (vehicular searches); A.R.Cr.P. 14.2 (search of open lands); and A.R.Cr.P. 14.3 (emergency searches). Federal case law has created other exceptions which may be applicable. See Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868 (1968) (search during a "frisk" after a valid stop); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642
(1967) (search while in "hot pursuit" of a suspected felon);Schmerber v. California, 384 U.S. 757, 88 S.Ct. 1826 (1966) (search of evidence in an "evanescent" state); and Coolidge v.New Hampshire, 403 U.S. 443, 91 S.Ct. 2022 (1971) (search in "plain view" from a lawful vantage point). You have not indicated in your request the existence of any of the circumstances which would generally remove the individual's search from the requirement of a warrant. Fact questions may arise in this regard which will necessitate a case-by-case review of whether any particular search falls within one of the exceptions to the warrant requirement.
As a general matter, however, officers under color of authority may generally not enter upon a person's property without a warrant to search. Constables, as "peace officers," are included within the definition of law enforcement officers. See Creditv. State, 25 Ark. App. 309, 758 S.W.2d 10 (1988) and Op. Att'y Gen. 91-090. Accordingly, it is my opinion that constables fall within the prohibition against officers under color of authority entering the property of private citizens without a warrant.
With regard to an agent of the society, the Supreme Court of Arkansas recently addressed this issue in Norton v. State,307 Ark. 336, 820 S.W.2d 272 (1991). The case involved the entrance of a member of a humane society on the property of another in order to investigate an allegation of cruelty to animals. While on the property, the self-described "field officer" (307 Ark. at 337) and a veterinarian seized a number of rabbits and goats they determined needed immediate care. At the subsequent trial, the property owner moved to suppress the evidence and testimony because the humane society member failed to obtain a search warrant.
The court noted that the argument hinged on whether the individuals who conducted the search were "officers or agents of the State." Id. at 339. The court agreed with the trial court's finding that "no officer of the law conducted any search and, therefore, no search warrant was required. . . ." Id. at 340. The court rejected the contention that a warrant was required under A.C.A. §§ 5-62-112 and -113 (1987), which address arrest authority in connection with the laws relating to or affecting animals. It was argued that the humane society member was a state officer when she searched the property because she had the authority under § 5-62-113 to make arrests, and § 5-62-112
authorizes one who has the power to arrest to conduct a search.Id. The court stated:
 Arkansas Code Ann. § 5-62-113 (1987) authorizes an agent of any `society . . . incorporated for the prevention of cruelty to animals, upon being appointed by the president of the society' to make arrests of persons violating the cruelty law. There is no evidence that Ms. Occhipinti, or any of the persons who accompanied her to Ms. Norton's property, had received an appointment from the President of the North Central Humane Society, or any other such groups to make arrests. There is thus no showing that they could have obtained a search warrant as `officers.'
The defendant was therefore unable to meet the burden of establishing that a state officer, as opposed to a private citizen, conducted the search.
This case reflects the court's view that an agent of an animal welfare organization who is appointed to make arrests would be required to obtain a search warrant, as an officer of the state.[2] The Norton case does not, unfortunately, offer guidance as to what evidence is necessary to establish such an appointment. This will, it seems, require a factual showing in each instance.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Sherry L. Daves.
Sincerely,
WINSTON BRYANT Attorney General
SLD:cyh
[1] I assume that your question is asked in a criminal law context, that is, with reference to the question of whether any evidence obtained in a search may be used at a subsequent criminal trial. It must be recognized in this regard that the fact that the individual seeking access to another's property is not acting "under color of authority," and therefore is not subject to the search warrant requirement, does not mean that he or she may enter the property. The individual would, in that instance, be acting as a private citizen to whom the property owner may, as a general matter, deny access.
[2] The animal welfare agent in Norton was apparently granted access to the property, despite the absence of a search warrant. As noted above (n. 1), however, the property owner would generally not be required to grant access to the agent under those circumstances.