Timothy EDWARDS *v.* STATE of Arkansas

CR 04-0382 201 S.W.3d 902

Supreme Court of Arkansas
Opinion delivered January 27, 2005

*Dana Reece*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Valerie L. Kelly*, Ass't Att'y Gen., for appellee.

A NNABELLE CLINTON IMBER, Justice. Appellant Timothy Edwards was convicted of aggravated robbery and theft of property and sentenced to life imprisonment. Thus, our jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1-2(a)(2) (2004). On appeal, he raises three points of error: (1) there was insufficient evidence to support his convictions; (2) the circuit court erred in failing to suppress evidence seized incident to his arrest; and (3) the circuit court erred in refusing to suppress the photo lineup. Finding no merit in any point raised, we affirm the circuit court.

Beginning in early March 2003, four separate robberies occurred within a ten-day period in southwest Little Rock. On March 9, 2003, the Phillips 66 Station at Scott Hamilton and Baseline Road was robbed. Tabatha Cannon was working at the station when the robbery occurred. She told a detective with the Little Rock Police Department that the robber was a bald, black man wearing a black jacket and black pants. Cannon also described the robber as being about six feet tall and 28 or 29 years old. A video surveillance camera captured this robbery on tape.

The next robbery occurred around 11 p.m. on March 17, 2003, at the Total Station on Geyer Springs Road. Law enforcement officers investigating this robbery learned from Velvet Cowan, a gas station employee, that the robber wore a black leather jacket, a blue skull cap or toboggan, and dirty boots. Shortly thereafter, at approximately 2 a.m. on March 18, 2003, an employee at the Shell Station on Baseline Road reported another robbery. Amar Kassees told law enforcement officers that the robber wore a black leather trench jacket and a midnight blue skull cap or toboggan.

Four hours later, at 6:30 a.m. on March 18, 2003, the fourth robbery occurred at the Super 8 Motel on Frenchman's Lane. Detective Bill Yeager, as well as other law enforcement officers, arrived at the motel around 7:00 a.m. At that time, he already knew about the other robberies in the same area. One of the motel employees, Terry Yelder, described the clothing worn by the robber as a black trench coat with a blue hooded jacket underneath the coat. Yelder also said that his cell phone had been stolen during the robbery. Another motel employee just happened to dial Yelder's cell phone number when some of the officers standing outside the motel saw Greg Dockery, who was walking along Frenchman's Lane, take a cell phone out of his pocket and answer it. They immediately picked Dockery up and escorted him to his apartment. Dockery told officers that Edwards had been to his

apartment earlier that morning and had left the cell phone and a windbreaker there. The officers seized the windbreaker from the apartment. Yelder identified the windbreaker as belonging to the person who robbed him. Based on this information, Edwards became a suspect in the robbery at the Super 8 Motel. Law enforcement officers then began to search for Edwards. Dockery disclosed that he had received a call from Edwards, and the caller ID on his phone indicated the call came from a Super 7 Motel.

Detective Yeager and the other officers proceeded to the Super 7 Motel. The owner, Anil Patel, advised them that Edwards had checked into the motel on March 17, 2003, and had made several phone calls from his room. When officers searched the room, they saw cigar wrappers in a trash can, but did not seize anything at that time. They also learned that Edwards had used the phone at the Super 7 to call his girlfriend, Deborah McCullough. Upon further investigation, the officers learned that Edwards had also called McCullough from a Motel 6 in North Little Rock.

Later that same day, five detectives went to the Motel 6 in North Little Rock. When they knocked on the door to his motel room, Edwards opened the door. He was arrested after being identified as the suspect in the Super 8 Motel robbery. At the time of the arrest, several officers indicated that they observed a black coat, a pair of leather shoes, and a toboggan cap in plain view in the room. Those items were seized immediately. Officers then returned to the Super 7 motel and seized the trash bag containing the cigar wrappers that Edwards had left in the room. Subsequently, Detective Yeager created a photo lineup containing Edwards's picture. All of the robbery victims identified Edwards in the photo spread as the person who robbed them.

One suppression hearing was held in connection with all four robberies. At the hearing, Detective Yeager testified that Dockery consented to a search of his apartment and Patel allowed officers to search the room that Edwards used at the Super 7 Motel. Patel testified that to his knowledge Edwards had checked out of the room prior to the police arriving. Furthermore, he did not observe any of Edwards's personal belongings remaining in the room. The circuit court denied all motions to suppress filed by Edwards.

The case arising out of the robbery at the Phillips 66 station was tried on January 7, 2004. The victim, Tabatha Cannon, and several law enforcement officers testified to the events as summa-

rized above. More significantly, the video surveillance tape and a still photograph were introduced into evidence. Also, over the defendant's objection, the leather jacket was admitted into evidence. Cannon testified that she was able to select Edwards from the photo lineup created by the police and she identified Edwards at trial as the person who robbed her. The sole witness called on behalf of the defense was the defendant's aunt, Lorraine Edwards. She testified that her nephew was at her home at the time of the March 9 robbery. At the conclusion of the trial, Edwards was found guilty of aggravated robbery and theft of property.

In his first point on appeal, Edwards challenges the sufficiency of the evidence supporting his convictions of aggravated robbery and theft of property.[1] In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Garner v. State*, 355 Ark. 82, 131 S.W.3d 734 (2003) (citing *Polk v. State*, 348 Ark. 446, 73 S.W.3d 609 (2002)). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id*. We view the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id*. Circumstantial evidence provides the basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id*.

The elements that the State must prove in order to convict a person of aggravated robbery are set forth in Ark. Code Ann. §§ 5-12-102 — 103 (2004). Section 5-12-102 states:

(a) person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another.

(b) Robbery is a Class B felony.

Ark. Code Ann. § 5-12-102. Section 5-12-103 further states:

(a) A person commits aggravated robbery if he commits robbery as defined in § 5-12-102, and he:

---

[1] We must first consider Edwards's argument that there was insufficient evidence to convict him because double jeopardy considerations require this court to consider a challenge to the sufficiency of the evidence prior to the other issues on appeal. *Atkinson v. State*, 347 Ark. 336, 64 S.W.3d 259 (citing *Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001)).

(1) Is armed with a deadly weapon or represents by word or conduct that he is so armed; or

(2) Inflicts or attempts to inflict death or serious physical injury upon another person.

(b) Aggravated robbery is a Class Y felony.

Ark. Code Ann. § 5-12-103. As to the proof required on the theft-of-property charge, Ark. Code Ann. § 5-36-103 provides in relevant part as follows:

(a) A person commits theft of property if he or she:

(1) Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the purpose of depriving the owner thereof; or

(2) Knowingly obtains the property of another person, by deception or by threat, with the purpose of depriving the owner thereof.

Ark. Code Ann. § 5-36-103 (2004).

In addition to the facts summarized earlier, Cannon testified at trial that she was alone when Edwards came into the Phillips 66 store. She noticed him at the freezer section while Cannon was with another customer. Edwards hollered out to ask if the store had any juice. Cannon responded that she would come help him look for juice when she finished with the other customer. Later, when she asked him if he had found the juice, Edwards did not reply. Cannon began to feel nervous. She testified that Edwards came up to the counter and said something like "give me the money." Cannon said, "What?", whereupon Edwards said, "Open it. Open it now." Because Cannon had already rung the purchase up, she struggled to open the register. Eventually she got the register open and started handing him the money. He asked for the rest of the money, so she handed him the next shift's cash too. Edwards told her to get down on the floor. She complied, hit the panic button, and then waited a few minutes before calling 911.

Cannon testified she was able to observe Edwards for a total of five minutes. He was wearing a black jacket and black pants. He was not wearing anything over his eyes. She could see

part of his nose, his eyes, his eyebrows and his whole head. He approached her and pointed his jacket at her insinuating that he had a gun. His hand was in his pocket. At one point, he was approximately 18 inches away from her. In sum, Cannon identified Edwards as the person who robbed her. Additionally, from a review of the surveillance tape and a still photograph, Cannon and Detective Yeager were both able to identify Edwards as the person on the video. Based on these facts, we have no hesitancy in holding that the evidence was sufficient to sustain both convictions.

Edwards also cites *Fairchild v. State*, 269 Ark. 273, 600 S.W.2d 16 (1980), in support of his argument that there is insufficient evidence to support the aggravated-robbery conviction when there was no evidence that Edwards had a weapon. The *Fairchild* case is, however, inapposite. In that case, we stated that

> [w]e are not persuaded that appellant's hand under his shirt, even with the admitted intention of conveying to the victim that he was armed, is sufficient representation to satisfy the requirements of aggravated robbery *in the absence of the victim's appreciation that he was armed*. It is clear from Mrs. Calva's testimony that she did not attach any special significance to this conduct and certainly did not perceive it to be in any way threatening.

*Fairchild v. State*, 269 Ark. at 275, 600 S.W.2d at 17 (emphasis added). Clearly, a representation through words or conduct indicating a person is armed is sufficient to satisfy the weapon requirement under our aggravated-robbery statute. Ark. Code Ann. § 5-12-103. Furthermore, unlike the victim in *Fairchild v. State*, Cannon testified that she was fearful and believed Edwards was armed based on his conduct. We therefore conclude that the argument on this point is without merit.

For his second point on appeal, Edwards argues that the circuit court erred in failing to suppress evidence seized incident to his arrest. Specifically, he challenges the searches at the apartment, the Super 7 Motel, and the Super 6 Motel on grounds that the police did not have a search warrant. The only item introduced into evidence at trial was a leather jacket that had been seized at the Super 6 motel. Nonetheless, Edwards contends that the other searches are important because the evidence collected at the those locations were used to develop Edwards as a suspect. Absent the first two illegal searches, Edwards suggests there would have been

less evidence tying him to the robberies. Our standard of review for a circuit court's action granting or denying motions to suppress evidence obtained by a warrantless search requires that we make an independent determination based upon the totality of the circumstances, giving respectful consideration to the findings of the circuit judge. *Davis v. State,* 351 Ark. 406, 94 S.W.3d 892 (2003) (citing *State v. Osborn,* 263 Ark. 554, 566 S.W.2d 139 (1978)).

First, Edwards does not have standing to assert his Fourth Amendment rights in connection with the search at the apartment. As the State properly indicates in its brief, Fourth Amendment rights are personal rights which may not be vicariously asserted. *Burkhart v. State,* 301 Ark. 543, 785 S.W.2d 460 (1990). Whether an appellant has standing depends on whether he manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as reasonable. *Littlepage v. State,* 314 Ark. 361, 863 S.W.2d 276 (1993).

In this case, the property manager for the apartment complex testified that the apartment was leased to Mohamed Bangura. Edwards was not a leaseholder on the apartment, and no additional evidence was presented to show that Edwards had any type of interest in the apartment. Accordingly, it is reasonable to conclude that he had no expectation of privacy in a third party's apartment. Thus, the circuit court did not err when it denied the motion to suppress as to the items seized in the apartment.

Similarly, Edwards does not have standing to assert his Fourth Amendment rights in connection with the search of the Super 7 Motel. He had clearly abandoned the motel room when police officers entered the premises. In *Rockett v. State,* we addressed a similar issue where the appellant's name was on the motel registration card. *Rockett v. State,* 318 Ark. 831, 890 S.W.2d 235 (1994), *overruled on other grounds by MacKintrush v. State,* 334 Ark. 390, 978 S.W.2d 293 (1998). In that case, we said that while it is well settled that one registered at a motel or hotel as a guest is protected against unreasonable searches and seizures by the Fourth Amendment to the United States Constitution, the appellant no longer had a reasonable expectation of privacy in the motel room as he abandoned the room at the time he fled from the police. *Id.* Likewise, in this case, the motel manager testified at the suppression hearing that he believed Edwards had checked out of the room by the time police arrived. He also testified that Edwards had already previously returned the room key. Moreover, there was

additional evidence presented that Edwards had in fact abandoned the room because none of his personal items were in the room when the police arrived at the motel. Based on the totality of the circumstances, it was reasonable for the circuit court to conclude that Edwards had in fact abandoned his expectation of privacy in the room.

Lastly, the police seized certain items at the Motel 6 when they arrested Edwards. Rule 4.1 of the Arkansas Rules of Criminal Procedure gives police the power to arrest persons without a warrant. It states in part:

> (a) A law enforcement officer may arrest a person without a warrant if:
>
> (I) the officer has reasonable cause to believe that such person has committed a felony.

Ark. R. Crim. P. 4.1(a)(i) (2004). In addition, Rules 12.1 and 12.2 provide officers who are making a lawful arrest with the authority to conduct a limited search. Rule 12.1 specifically states:

> An officer who is making a lawful arrest may, without a search warrant, conduct a search of the person or property of the accused for the following purposes only:
>
> (a) to protect the officer, the accused, or others;
>
> (b) to prevent the escape of the accused;
>
> (c) to furnish appropriate custodial care if the accused is jailed; or
>
> (d) to obtain evidence of the commission of the offense for which the accused has been arrested or to seize contraband, the fruits of crime, or other things criminally possessed or used in conjunction with the offense.

Ark. R. Crim. P. 12.1 (2004)(emphasis added). Rule 12.2 further provides that

> [a]n officer making an arrest and the authorized officials at the police station or other place of detention to which the accused is brought

may conduct a search of the accused's garments and personal effects ready to hand, the surface of his body, and the area within his immediate control.

Ark. R. Crim. P. 12.2 (2004).[2] In applying these rules, we have consistently held that searches within this lawful scope do not violate an individual's Fourth Amendment rights. *Hazelwood v. State*, 328 Ark. 602, 945 S.W.2d 365 (1997).

■ Here, the police had identified Edwards as a suspect in the robbery that occurred at the Super 8 Motel on March 18, 2003, in which Yelder was the victim. They had recovered Yelder's cell phone and Yelder identified the windbreaker that the robber was wearing. These items were connected to Edwards through Dockery. Finally, information obtained from Edwards's girlfriend led officers to Motel 6 where he was arrested. Based on these facts, we conclude that the officers had reasonable cause to believe that Edwards had committed a felony. Therefore, pursuant to Ark. R. Crim. P. 4.1(a), they had authority to arrest him without a warrant. Furthermore, after the arrest and pursuant to Rules 12.1(d) and 12.2, it was legal for the officers to seize the leather jacket, which was in "plain view" and was evidence that Edwards had committed a robbery. *Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998) (police officers legitimately at a location and acting without a search warrant may seize an object in plain view if they have probable cause to believe that the object is either evidence of a crime, fruit of the crime, or an instrumentality of a crime, citing *Arizona v. Hicks*, 480 U.S. 321 (1987)); *Hazelwood v. State, supra.* We affirm the circuit court's denial of the motion to suppress evidence seized incident to the defendant's arrest.

For his final point on appeal, Edwards argues that the circuit court erred in refusing to suppress the photo lineup. This argument is procedurally barred. In *Lewis v. State*, 354 Ark. 359, 123 S.W.3d 891 (2003), as in this case, the appellant filed a motion prior to trial requesting that the out-of-court photo identifications made by the witnesses be suppressed. The trial court denied the motion. At trial, however, the appellant did not object to the in-court iden-

---

[2] These rules reflect the U.S. Supreme Court's decisions in *Chimel v. California*, 395 U.S. 752 (1969) and *U.S. v. Robinson*, 414 U.S. 218 (1973).

tifications made by the witnesses. The appellant's failure to object to the in-court identification barred our review because an out-of-court identification based on a photo array is not preserved for review where, despite challenging the photo identification prior to trial, the appellant failed to object to the witness's in-court identification. *See Fields v. State,* 349 Ark. 122, 76 S.W.3d 868 (2002); *Goins v. State,* 318 Ark. 689, 890 S.W.2d 602 (1995). To preserve a challenge to a pretrial photographic identification, we require a contemporaneous objection to an in-court identification at trial. *Fields v. State, supra.*

 In the instant case, Edwards did not object at trial to Cannon's in-court identification of him as the person who robbed her. Thus, even though Edwards objected at trial to the introduction of the victim's pretrial photographic identification, because there was no objection to her in-court identification, the argument that the court erred in failing to suppress the out-of-court photo identification is not preserved for our review. *Lewis v. State, supra.*

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely Edwards, and no prejudicial error has been found. *Doss v. State,* 351 Ark. 667, 97 S.W.3d 413 (2003).

Affirmed.