# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-13-864

| | | |
|---|---|---|
| | | **Opinion Delivered** April 23, 2014 |
| CURTIS HORTON | | APPEAL FROM THE SALINE |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [No. 63CR-11-344-2] |
| V. | | HONORABLE GARY ARNOLD, |
| | | JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Curtis Horton was convicted in the Saline County Circuit Court of aggravated residential burglary, theft of property, and failure to appear. On appeal, he challenges only the aggravated-residential-burglary conviction, arguing that there was insufficient evidence to support it. We affirm.

The facts developed at trial were that on the morning of March 17, 2011, Lisa Stanfield left her home for work but returned later that morning to retrieve her daughter's science project. She said that when she left for work, she closed the overhead garage door, but when she returned, it was open and there was an unfamiliar vehicle in her garage. She pulled in behind the strange vehicle, walked into the garage toward the door to her house when a man exited her home, "aggressively hopping toward" her. She said that she observed the man put his hands in his jacket pocket and approach her. When he was within three or four feet of her, he said, "you better back up off me." Stanfield said that she retreated. As she retreated, she stated that she

drew her shoulders up anticipating a bullet to the back of her head because she thought he had a gun. As Stanfield returned to her vehicle, she glanced at the license-plate number of the vehicle in her garage. After she drove away, she called 911.

Stanfield returned to her house once officers from the Bryant Police Department arrived. Upon inspection, she discovered that someone had disturbed the home's contents and that several items of personal property were missing. Police lifted fingerprints from the home, and the chief latent-print examiner from the Arkansas Crime Lab testified that two of the prints were Horton's. Based on their investigation, officers showed Stanfield six photographs, and she identified Horton as the man she saw in her garage. She also identified him at trial. She testified that she assumed Horton had a gun because he kept his hands in his pocket and because of his behavior toward her. Based on this evidence, the jury convicted Horton of aggravated residential burglary. On appeal, Horton argues that there is insufficient evidence supporting this conviction.

In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Edwards v. State*, 360 Ark. 413, 417, 201 S.W.3d 909, 913 (2005). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.*, 201 S.W.3d at 913. We view the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*, 201 S.W.3d at 913. Circumstantial evidence provides the basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.*, 201 S.W.3d at 913.

Arkansas Code Annotated section 5-39-204(a) (Repl. 2013) provides that

(a) A person commits aggravated residential burglary if he or she commits residential burglary, as defined in Arkansas Code Annotated section 5-39-201[1] of a residential occupiable structure occupied by any person, and he or she:
(1) Is armed with a deadly weapon or represents by word or conduct that he or she is armed with a deadly weapon; or
(2) Inflicts or attempts to inflict death or serious physical injury upon another person.

Relying on subsection 5-39-201(a)(1), Horton argues that there was insufficient evidence upon which a jury could find that he was armed with a deadly weapon. He contends that there is no evidence in the record that he had a deadly weapon, and on this point we agree. He also maintains that there was insufficient evidence upon which a jury could find that he represented through his words or conduct that he was armed with a deadly weapon. He claims that the only evidence to support this element was that he placed his hands in his pockets, which he argues is insufficient to support the aggravated-residential-burglary conviction. On this point we disagree.

In cases where the accused makes no verbal representation that he is armed, the focus is on what the victim perceived concerning a deadly weapon. *Dobbins v. State*, 2013 Ark. App. 269, at 4 (citing *Feuget v. State*, 2012 Ark. App. 182, 394 S.W.3d 310, 312). *See also Edwards*, 360 Ark. at 419, 201 S.W.3d at 919 (affirming an aggravated-robbery[2] conviction where the victim

---

[1]A person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a)(1) (Repl. 2013).

[2]The offense of aggravated robbery, like aggravated residential burglary, requires the element that a person committing robbery be armed with a deadly weapon or represent by word or conduct that he is armed with a deadly weapon. Ark. Code Ann. § 5-12-103(a)(1), (2) (Repl. 2013).

believed that the defendant was armed with a deadly weapon). In *Parker v. State*, 271 Ark. 84, 86, 607 S.W.2d 378, 379 (1980), our supreme court held that there was sufficient evidence to support an aggravated-robbery conviction based on the victim's testimony that she thought Parker had a gun and that she was scared when he put his hand in his pocket and asked for money. In *Dobbins*, the victim testified that when Dobbins came into her house, he told her to give him money and that he was going to kill her; that he had a paper bag over his right hand; that his right hand was pointing directly at her stomach; and that she believed that there was a gun in the paper bag. 2013 Ark. App. 269, at 4. We held that the victim's perception that Dobbins was armed with a deadly weapon, although erroneous, was sufficient to support the finding that he represented by his conduct that he was armed with a deadly weapon and affirmed the convictions for aggravated robbery and aggravated residential burglary. *Id.*

Based on these cases, we hold that there is substantial evidence supporting the jury's finding that Horton represented by word or conduct that he was armed with a deadly weapon. Stanfield testified that Horton kept his hands in his pockets throughout the encounter, he moved aggressively toward her, and he warned her she "better back off" him. She also testified that she believed that he had a gun and might shoot her when she retreated. The jury apparently found Stanfield's testimony credible, which was clearly a matter within its province, *King v. State*, 2014 Ark. App. 81, at 2, ___ S.W.3d___, ___ (holding that the trier of fact resolves the question of credibility), and we hold that her testimony constitutes substantial evidence supporting the aggravated-residential-burglary conviction.

Relying on section 5-39-201(a), Horton also argues that there was insufficient evidence that he committed aggravated residential burglary of a "residential occupiable structure." The criminal code defines a "residential occupiable structure" as "a vehicle, building or other structure: (i) [i]n which any person lives; or (ii) [t]hat is customarily used for overnight accommodation of a person whether or not a person is actually present."Ark. Code Ann. § 5-39-101(4)(A)(i), (ii) (Repl. 2013). Horton points out that Stanfield never entered her home and that there was no evidence that she lived in the garage or customarily used it for overnight accommodation.

We hold that the garage falls within the definition of a "residential occupiable structure" because it is a building or structure in which Stanfield lived. Ark. Code Ann. § 5-39-101(4)(A)(i). Based on her testimony, it was revealed that the garage was attached to her home and was an integral part of her home. It held two cars, although half of the garage was used to store Stanfield's personal items. She testified that she exited her garage each day for work, shutting the overhead garage door and using it to secure her home. Significantly, Stanfield was using her garage at the time of her encounter with Horton.

In *Winters v. State*, we held that a storage room attached to a business was an "occupiable structure" in that it was "functionally interconnected with, and immediately contiguous to the main structure in which the [merchant] carried on its business." 41 Ark. App. 104, 110, 848 S.W.2d 441, 445 (1993). We further held that "[s]imple logic would suffer were we to hold that the supply room was somehow different from an office in a building or a body shop at an auto dealership because no inside entrance connected the two structures." *Id.*, 848 S.W.2d at 445. In

5

the instant case, Stanfield's garage was "functionally interconnected with, and immediately contiguous to the main structure" in which she lived. Simple logic would suffer were we to hold that the attached garage that Stanfield used daily was somehow different from her house.

Finally, in *Julian v. State*, 298 Ark. 302, 304, 767 S.W.2d 300, 301 (1989), our supreme court held that the definition of "occupiable" does not depend on the presence of a person in a building or on whether it is being used for some other purpose as long as "the nature of the premise" is that it is "occupiable." Our supreme court stated:

> The obvious reason for the distinction between our burglary and breaking and entering statutes is the intent of the general assembly to punish burglary more severely because it involves entering a place where people, as opposed to mere property, are likely to be. . . . The [trailer] was thus one in which a person planning to enter could have anticipated finding a person or persons, absent any evidence that the trailer was uninhabitable, and thus entering it could have endangered human life or health. It was the sort of building to which the burglary statute was intended to apply.

*Julian*, 298 Ark. at 304, 767 S.W.2d at 301 (citation omitted). Stanfield's attached garage is a place where people are likely to be—as demonstrated by the facts of this case. It is the sort of structure to which the burglary statute was intended to apply. Therefore, we hold that Stanfield's garage is a "residential occupiable structure" pursuant to section 5-39-101(4)(A)(i). Accordingly, we hold that substantial evidence supports the aggravated-residential-burglary conviction and affirm.

Affirmed.
WYNNE and WHITEAKER, JJ., agree.
*Digby Law Firm*, by: *Bobby R. Digby II*, for appellant.
*Dustin McDaniel*, Att'y Gen., by: *Eileen W. Harrison*, Ass't Att'y Gen., for appellee.