Ronald OWEN *v.* STATE of Arkansas

CA CR 00-820 53 S.W.3d 62

Court of Appeals of Arkansas
Division II
Opinion delivered September 5, 2001
[Supplemental opinion on denial of rehearing
delivered October 24, 2001.]

*Miller Law Firm*, by: *Randel Miller* and *Brenton Bryant*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Ronald Owen was convicted in a Craighead County jury trial of possession of methamphetamine with intent to deliver, possession of drug paraphernalia with intent to manufacture, possession of marijuana with intent to deliver, and misdemeanor possession of paraphernalia with intent to use, for which he received concurrent sentences of 120, sixty, seventy-two, and twelve months, respectively, in the Arkansas Department of Correction. On appeal, Owen challenges a finding

by the trial court that he lacked standing to challenge the validity of the search of a motel room where he was staying as a "guest occupant." We affirm.

At a hearing on Owen's suppression motion, Jonesboro Best Western desk clerk Mary Cheney testified that on July 30, 1999, Room 222 was rented to Teresa Johnson of Paragould. Cheney stated that on the day in question she was sent to the room by the manager to rectify a telephone problem. According to Cheney, she knocked and was admitted to the room by a gentleman who was there alone. In the course of changing the phone from one jack to another, she noticed a large amount of cash on the bed and a "really bad smell . . . like ether." Cheney called the police, who arrived at the motel approximately thirty minutes later.

Jonesboro officers Tommy Crawford and Kevin Foust responded to Cheney's call. Officer Crawford testified that while Officer Foust knocked on the door, he stood at the window. Owen answered the door and stepped out of the room to speak with the officers, closing the door behind him. Officer Crawford stated that he turned his attention to the window itself and through a three-inch gap in the curtains, he observed loose marijuana on a tray that was sitting on a table that was just inside the room. He also observed a digital scale and a two-quart mason jar that contained a clear liquid. Officer Crawford asserted that based on his experience as a law-enforcement officer, the scales were commonly used for weighing narcotics. Additionally, he detected the smell of ether, which from his experience and training, he associated with the manufacture of methamphetamine. The next thing he observed was a female and a male quickly gathering the suspected contraband from the table. Officer Crawford feared that evidence would be destroyed and alerted Officer Foust of this fact. Officer Foust entered the room while Officer Crawford arrested Owen. Officer Foust secured the two suspects and called in drug task force officers. According to Officer Crawford, the officers made a quick sweep of the room for other suspects, during which he discovered in plain view what appeared to be methamphetamine, as well as coffee filters, tubing, and an open cooler that contained chemicals that were commonly used in the production of methamphetamine. Upon the arrival of drug task force agents, Officer Crawford transported the three suspects to the county jail and returned to await the return of Teresa Johnson.

Officer Foust corroborated the testimony of Officer Crawford and further testified that he observed the female suspect pouring

out a two-quart jar of liquid, and confirmed that there was an ice chest in plain view that contained several chemicals that he knew were commonly used in the manufacture of methamphetamine. He also observed some glassware, a blender, and some rubber tubing. When he arrested Owen, Officer Foust searched him and found a baggie containing what he believed was methamphetamine. When Johnson arrived, the officers confronted her and explained that three individuals had been arrested in the room she had rented and the police had observed what they believed was drug paraphernalia. Johnson then signed a consent-to-search form.

Drug task force officer Jerry Roth testified that when he arrived at the motel, Officers Foust and Crawford were already in Room 222 with the three suspects. He confirmed that there was a possible methamphetamine lab in plain sight in the room. He stated that he and Officer Foust were en route to get a search warrant when the officers on the scene got consent to search. Officer Roth stated that marijuana was found on the floor of the bathroom along with some residue in the toilet. He also stated that he detected an odor of ether in the room and, based on his experience and knowledge of the process, that the odor would be present during the later stages of cooking methamphetamine.

Testifying on his own behalf, Owen stated that when the police arrived, he had been in the room "no longer than an hour," and he admitted that the room was not his. He denied seeing any loose marijuana or digital scales, but admitted that he had seven bags of marijuana zipped up in an overnight bag. He disputed the police's ability to see inside the room, asserting that the blinds were closed. He also stated that he did not remember any smell of ether in the room and that he had never been present when methamphetamine was being made. According to Owen, he knew that Teresa Johnson had rented the room, and he got a key to the room so that he could stay with Johnson's sister, Erin Lizinby. Owen recalled that a man, who was dating Johnson at the time, and another female acquaintance were also present. Owen stated that Johnson had told him the night before that she would have the room and that she had brought her sister. At the close of all the evidence, the court found that Owen did not have standing to challenge the search of the premises and denied the motion to suppress.

Before we take up Owen's argument on appeal, we must first dispose of the State's assertion that this appeal is procedurally barred because Owen has not included trial proceedings in his abstract or transcript. Citing *Davis v. State*, 325 Ark. 194, 925 S.W.2d 402

(1996), the State claims that this omission is dispositive because it denies the court the ability to " 'assess the impact of the allegedly' illegally seized evidence 'on the trial and determine whether prejudice resulted[ ]' from the denial of the motion to suppress." We find this argument unpersuasive, and the State's reliance on *Davis* clearly misplaced.

■ In the first place, the instant case is clearly distinguishable from *Davis*. The suppression issue in *Davis* involved a pretrial and in-court identification of the defendant, whereas the issue here is whether Owen had standing to challenge the search of the motel room that he was occupying. The appellant in *Davis* argued that the pretrial and in-trial identification should be suppressed because the mug shot that was used to initially identify him was made pursuant to an arrest on an unrelated charge that was later declared invalid. In declining to reach the merits of that issue in *Davis*, the supreme court reasoned that with such a tenuous assignment of error, it required more of the proceedings to be abstracted for it to determine if the appellant was prejudiced. Conversely, we have no difficulty determining the importance of the evidence in question — without the items seized in the motel room, there is no case. Furthermore, the motion to suppress the identification in *Davis* was made at the trial, and apparently none of the proceedings were abstracted. In the instant case, the motion was made before trial, and the suppression hearing is completely abstracted. Rule 4-3(g) of the Rules of the Supreme Court and Court of Appeals states: "In all felony cases it is the duty of the appellant . . . to abstract such parts of the record, but only such parts of the record as are material to the points to be argued in the appellant's brief." Owen has fully and fairly abstracted all material parts of the suppression hearing; to require more would be contrary to our own rules.

As his only point on appeal, Owen asserts that the trial court erred in finding that he did not have standing to assert a violation of his Fourth Amendment protection against an unreasonable search by the police who searched the motel room where Mr. Owen was staying as a guest occupant. Owen contends that he had standing as defined in *Rankin v. State*, 57 Ark. App. 125, 942 S.W.2d 867 (1997), where this court stated that the "pertinent inquiry regarding standing to challenge a search is whether a defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as reasonable." He asserts that he had a subjective expectation of privacy in the motel room in that, at the invitation of Ms. Johnson, he packed an overnight bag and left his home town to stay with Ms. Lizinby,

Johnson's sister, whom he already knew. He notes that he arrived at the motel, got a key from the desk clerk, and was waiting in the room for Ms. Lizinby when the police arrived. He also states that when he answered the door, he stepped outside and shut the door behind him to speak to the officers. He contrasts his actions with the appellant in *Rankin v. State, supra*, where there was no showing that the appellant maintained any control over premises searched. Citing *Minnesota v. Olsen*, 495 U.S. 91 (1990), Owen argues that a motel room·is entitled to the same constitutional protection as a home and that his prior relationships with Ms. Lizinby and Ms. Johnson suggested a "degree of acceptance" into the premises. He urges this court to find that it is of no moment that the room was not registered in his name. Finally, he contends that the trial court was simply wrong in basing its decision on standing on a finding that there was "no proof in the record of whether there was an attempt to stay overnight." We find merit in Owen's argument; nonetheless, we still must affirm.

When we review a ruling on a motion to suppress, we make an independent determination based on the totality of the circumstances, viewing the evidence in the light most favorable to the State, and reverse only if the ruling is clearly against the preponderance of the evidence. *Norman v. State*, 326 Ark. 210, 931 S.W.2d 96 (1996). The Fourth Amendment protects an individual's legitimate expectation of privacy against unreasonable searches and seizures, and entry into a dwelling in which an individual has a reasonable expectation of privacy must be viewed as illegal unless the State established the availability of an exception to the warrant requirement. *Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997). When a person owns or is in possession of the property searched, he has standing to challenge the legality of the search. *See Mazepink v. State*, 336 Ark. 171, 987 S.W.2d 648 (1999).

The trial judge erred in finding that Owen lacked standing to challenge the search. The United States Supreme Court only requires a *subjective* expectation of privacy. *See Minnesota v. Olsen, supra; see also Rankin v. State, supra*. In *Davasher v. State*, 308 Ark. 154, 823 S.W.2d 863 (1992), under a subsection of the opinion entitled "Standing," the supreme court cited *Parette v. State*, 301 Ark. 607, 786 S.W.2d 817 (1990), for the proposition that an individual had no standing to contest a warrantless search and seizure because there was no showing that the person owned or leased the searched premises and there was no showing the person maintained any control over the premises; yet the court went on to hold that the mere fact that appellant stayed at his mother's home

did not give him a reasonable expectation of privacy in the premises. In the instant case, we have clear evidence that Owen exercised control over the room. According to the testimony of police, although three persons were present, it was Owen who answered the door, and he pulled it closed behind him when he spoke with police. Moreover, Teresa Johnson was not on the premises, and although we are required to view the evidence in the light most favorable to the State, Owen's testimony that he had retrieved a key to the room and intended to spend the night, apparently with Johnson's consent, was not disputed. Accordingly, we hold that the trial judge erred in failing to find that Owen had standing to challenge the search.

Nonetheless, we affirm the trial court because it reached the right result. *Kimery v. State*, 63 Ark. App. 52, 973 S.W.2d 836 (1998). Entry into the motel room was made after Officer Crawford observed contraband in plain view through the window and became aware that persons in the room were likely disposing of the evidence. Pursuant to the plain-view exception to the Fourth Amendment's warrant requirement, when police officers are legitimately at a location and acting without a search warrant, they may seize an object in plain view if they have probable cause to believe that the object is either evidence of a crime, fruit of a crime, or an instrumentality of a crime. *Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998). Additionally, the subsequent reentry of the motel room by police was made with Johnson's consent. Owen does not argue, nor could he reasonably do so, that Johnson, the person who rented the room, did not have the authority to consent to the search.

Affirmed.

BIRD and BAKER, JJ., agree.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

CA CR 00-820 53 S.W.3d 62

Opinion delivered October 24, 2001

Supplemental opinion on Denial of Rehearing.

*Miller Law Firm*, by: *Randel Miller* and *Brenton Bryant*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. On September 5, 2001, we affirmed the convictions of Ronald Owen for various drug charges. The State subsequently filed a petition for rehearing, requesting only that we correct a misstatement of the law within our opinion. We deny the State's petition, but issue this supplemental opinion on rehearing to avoid any misinterpretation of our original holding.

 In our opinion, we cited *Rankin v. State*, 57 Ark. App. 125, 942 S.W.2d 867 (1997), for the proposition that a person has standing to challenge a search "if he manifested a subjective expectation of privacy in the area searched and society is prepared to recognize that expectation as reasonable." The State takes issue with our subsequent statement, "The United States Supreme Court only

requires a *subjective* expectation of privacy." It is implicit in the body of our opinion that the proper inquiry includes both whether there was a subjective expectation of privacy and whether society is prepared to recognize the expectation as reasonable. *See Minnesota v. Olsen*, 495 U.S. 91 (1990); *Rankin v. State, supra.*

PITTMAN, ROBBINS, BIRD, GRIFFEN, and BAKER, JJ., agree.