Lee Roy DAVIS *v.* STATE of Arkansas

CA CR 01-503                                    74 S.W.3d 671

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered May 8, 2002

*Katherine S. Streett,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Lauren Elizabeth Heil,* Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Lee Roy Davis was charged with possession of a controlled substance with intent to deliver and possession of drug paraphernalia. After the trial court denied his motion to suppress the cocaine and crack pipe that were found in a pat-down search of his person by police. Davis entered a conditional guilty plea, reserving his right to appeal the denial of the motion to suppress. On appeal, Davis argues that the trial court erred in denying his motion to suppress because the detention, questioning, and search of his person violated the Fourth and Fourteenth Amendments and Arkansas Rules

of Criminal Procedure 3.1 and Rule 3.4. We agree, and we reverse and remand.

Lieutenant Billy White and Sergeant Brandon Ivy were on bicycle patrol in a "troubled" area of El Dorado. White observed five men in the yard of a vacant house, two of whom, Davis and another man, were standing together. When the two men observed the officers, they turned and walked away quickly. Ivy stopped the men and requested that Davis state his name and date of birth. Ivy relayed to the Arkansas Crime Information Center (ACIC) the name and date of birth that Davis gave to him. ACIC returned no record for such name and birth date. When Ivy requested consent to search, Davis responded with an inquiry into the basis of Ivy's probable cause. Davis then told Ivy that he would "give you my sh\*\*" and reached into his pocket. Ivy told him that he would get it and then pulled a crack pipe from Davis's pocket.

Officer White testified that the southeast area of El Dorado, near Detroit and Roosevelt Streets, was an area known for drug activity. He testified that he observed five persons in the front yard of a vacant house near this intersection, that two of them were standing side by side next to the house, and that it appeared as if they were exchanging something. Officer White admitted that he "did not see them exchange anything. They just gave the appearance as though they were exchanging something. One of them actually had his hands out as though he was receiving or giving something to the other. I didn't see anything actually being handed back and forth." He further testified that when these two individuals saw the officers, they "hurriedly walk[ed] away."

Sergeant Brandon Ivy testified that he observed Davis and another person immediately separate. He stated that he intended to stop and detain Davis in order to identify him. He told Davis that he had detained him because he had been seen making a hand-to-hand transaction. Upon request for his name, Davis incorrectly told Ivy that his name was John Davis and gave an

incorrect birth date. Ivy testified that ACIC returned no record of such a person.

In reviewing the denial of a motion to suppress evidence, we make an independent examination based upon the totality of the circumstances and reverse only if the decision is clearly against the preponderance of the evidence. *Brunson v. State,* 327 Ark. 567, 940 S.W.2d 440 (1997); *State v. Osborn,* 263 Ark. 554, 566 S.W.2d 139 (1978); *McDaniel v. State,* 65 Ark. App. 41, 985 S.W.2d 320 (1999).

A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain for no more than a few minutes any person whom he reasonably suspects is committing, has committed, or is about to commit a felony or a misdemeanor involving danger of forcible injury to persons or appropriation of or damage to property. *See* Ark. R. Crim. P. 3.1. The justification for the investigative stop depends upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity. *Hill v. State,* 275 Ark. 71, 628 S.W.2d 284, *cert. denied,* 459 U.S. 882 (1982). Reasonable suspicion is defined as suspicion based upon facts or circumstances that give rise to more than a bare, imaginary, or purely conjectural suspicion. Ark. R. Civ. P. 2.1; *Stewart v. State,* 332 Ark. 138, 964 S.W.2d 793 (1998).

Additionally, Ark. Code Ann. § 16-81-203 (Repl. 1999) sets forth a list of factors to be considered in determining whether an officer has grounds for reasonable suspicion. Among these factors are the gait and manner of the suspect; whether the suspect is carrying anything; time of the day or night the suspect is observed; the particular streets and areas involved; any information received from third persons, whether they are known or unknown; whether the suspect is consorting with others whose conduct is "reasonably suspect"; the suspect's proximity to known criminal conduct; incidence of crime in the immediate neighbor-

hood; and the apparent effort of the suspect to avoid identification or confrontation by the police. Ark. Code Ann. § 16-81-203.

This court recently considered a case involving the propriety of an initial detention in *Jefferson v. State*, 76 Ark. App. 300, 64 S.W.3d 791 (2002), and reversed the conviction based on the illegality of the initial detention. In *Jefferson*, officers stopped the appellant after observing him walking from between two mobile homes and crossing the street; the officers became suspicious of him because of the time of night, and turned their patrol car headlights on him. When Jefferson saw the headlights, he quickly changed direction and went back to the other side of the street. The officers then ordered Jefferson to stop. As Jefferson approached the officers, he pulled something out of his pocket and dropped it on the ground. The officers later retrieved the object, which contained cocaine. This court found that the initial stop was improper as the officers were not investigating a particular crime as required by Ark. R. Crim. P. 2.2.

The Arkansas Supreme Court likewise reversed a denial of a motion to suppress in another case involving facts similar to the instant case. In *Stewart v. State*, 332 Ark. 138, 864 S.W.2d 793 (1998), an officer was patrolling a known drug-trafficking area when he observed the defendant standing on the street corner. Given the late hour (almost 2 a.m.), the fact that the area was known for drug activity, and that the officer had personally made numerous arrests in that area, he suspected Stewart may have been dealing narcotics. *Stewart v. State, supra.* The officer approached Stewart, asked her what she was doing, and asked her to remove her hands from her jacket pockets. When Stewart kept trying to place her right hand back into her jacket pocket, the officer performed a pat-down search for weapons and felt a bulge in her pocket. The officer removed the bulge, which turned out to be $135 and a matchbox containing crack cocaine. The supreme court held that the initial encounter with Stewart was impermissible under Ark. R. Crim. P. 2.2 and 3.1 because the officer lacked reasonable suspicion to stop Stewart.

In the case at bar, the officers simply saw two men standing side by side in an alleged high-crime area. The officers did not observe any criminal activity, nor did they observe a suspicious transaction. The officers did not have reasonable suspicion as defined by Rule 2.1, and they were not investigating a particular crime as required by Rule 2.2. Consequently, they failed to comply with Rule 3.1 because they lacked reasonable suspicion to stop and detain Davis.

The officers further attempted to justify the stop by showing the existence of other factors that arose afterwards, *see* Arkansas Code Annotated. § 16-81-203, *supra*, *i.e.* Davis's attempt to conceal his identity, as well as his "fidgety" behavior when questioned. However, this evidence is not relevant to the determination of whether the initial stop was reasonable because it was not known at the time the officers decided that a stop was warranted. *See Ornelas v. United States*, 517 U.S. 690 (1996)(holding that denial of motions to suppress evidence obtained in warrantless searches should be reviewed *de novo*, including a determination of the historical facts *leading up to the stop* or search)(emphasis added). The only factors known prior to the stop were the time of day, 2:30 p.m., and the incidence of crime in the neighborhood. Even if Davis's effort to avoid the police by turning away when they approached is considered, the information known to the officers at the time they decided to detain Davis is insufficient to supply the requisite reasonable suspicion to stop.

Reversed and remanded.

ROBBINS and BAKER, JJ., agree.

BIRD and NEAL JJ., concur.

PITTMAN, J., dissents.

S AM BIRD, Judge, concurring. I concur in the reversal of this case, but I do not agree with the basis of the majority's decision. Unlike the majority, I believe that reasonable suspicion existed to detain Davis; but I would reverse and remand with instructions to the trial court to grant Davis's suppression motion

because the search of his outer clothing (commonly referred to as a "frisk") violated Rule 3.4.

In *Stewart v. State*, 332 Ark. 138, 964 S.W.2d 793 (1998), the court reversed a trial court's denial of a motion to suppress when Stewart was detained by officers because she was standing on a street corner in a known drug area. On appeal, the supreme court stated that the officer's "only justification for stopping Stewart was simply that she was standing in the wrong place at the wrong time." *Id.* at 146, 964 S.W.2d at 797.

In *Meadows v. State*, 269 Ark. 380, 602 S.W.2d 636 (1980), the court held that Rule 3.1 did not permit officers to stop and detain airline passengers who quickened their pace and continued to look back when followed by the officers. In *Jefferson v. State*, 76 Ark. App. 300, 64 S.W.3d 791 (2002), this court reversed a denial of a motion to suppress on facts similar to the case at bar. Police stopped Jefferson in a high-crime area late at night. Jefferson appeared startled when the police shined their car headlights upon him, and he began walking in the other direction. Ultimately, he did return to the officers, but as he did, he attempted to discard a package that contained cocaine. This court held that the officers possessed no reasonable suspicion to stop Jefferson. The only factors present were that Jefferson was walking in a high crime area, late at night, was startled by the police, and initially ignored the officers when they shined their headlights upon him. We held that reasonable suspicion could not be grounded upon such facts.

The case at bar, however, is distinguishable from *Stewart*, *Meadows*, and *Jefferson*. Davis was observed acting as if he was handing something to another individual, on a street known for drug trafficking, and Davis attempted to avoid confrontation with the officers by walking away hurriedly when he observed them. Under *Stewart*, *Meadows*, and *Jefferson*, these factors, when each is viewed in isolation, cannot support a finding of reasonable suspicion under Rule 3.1. Davis's mere presence in a known drug area cannot support reasonable suspicion under *Stewart* and *Jefferson*. Nor can Davis's walking quickly away when he observed the

officers, under *Meadows,* by itself support a finding of reasonable suspicion.

However, the United States Supreme Court, in *United States v. Arvizu,* 534 U.S. 266 (2002), held that reasonable suspicion existed even though, when viewing each factor in isolation, none of the individual factors, by themselves, provided a basis for reasonable suspicion. In discussing the Ninth Circuit Court of Appeals' reversal of the denial of the motion to suppress, the Court stated that the lower court's

> evaluation and rejection of . . . the listed factors in isolation from each other does not take into account the "totality of the circumstances," as our cases have understood that phrase. The court appeared to believe that each observation by [the police officer] that was by itself readily susceptible to an innocent explanation was entitled to "no weight." *Terry,* however, precludes this sort of divide–and–conquer analysis. The officer in *Terry* observed the petitioner and his companions repeatedly walk back and forth, look into a store window, and confer with one another. Although each of the series of acts was "perhaps innocent in itself," we held that, taken together, they "warranted further investigation."

*Id.* at 751.

The Court further stated that "[t]o the extent that a totality of the circumstances approach may render appellate review less circumscribed by precedent than otherwise, it is the nature of the totality rule." *Id.* at 752. Thus, while our precedent dictates that mere presence or walking hurriedly away cannot, by itself, constitute a basis for reasonable suspicion, such precedent cannot preclude our review of these factors as part of the totality of the circumstances.

Davis was in a known drug area, walked quickly away when the officers approached, and had been observed by one of the officers to be engaging in actions that appeared to be a hand–to–hand transaction. Viewing the totality of these factors and circumstances as we must, it is my opinion that reasonable suspicion

existed for the Rule 3.1 detention of Davis. I take a different view, however, of the frisk. Arkansas Rule of Criminal Procedure 3.4 provides that:

> if a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officer or others, the officer or someone designated by him may search the outer clothing of such person and the immediate surroundings for, and seize, any weapon or other dangerous thing which may be used against the officer or others.

Essentially, the question is whether a reasonably prudent person in the officer's position would be warranted in the belief that the safety of the police or that of other persons was in danger. *Terry v. Ohio*, 392 U.S. 1 (1968); *Pettigrew v. State*, 64 Ark. App. 339, 984 S.W.2d 72 (1998). The officer's reasonable belief that the suspect is dangerous must be based on "specific and articulable facts." *Terry*, 392 U.S. at 21.

In *Howe v. State*, 72 Ark. App. 466, 39 S.W.3d 467 (2001), we refused to uphold a weapons pat-down where the officer testified at the suppression hearing that at no time did he believe that Howe was armed and dangerous. The court stated that:

> In this case, [Officer] Martin testified at the suppression hearing that at no time did he believe Howe was armed or dangerous. Nor did Martin place Howe under arrest or have probable cause to arrest him before conducting the pat-down search. Based on this testimony by Martin, the only basis upon which his pat-down search of Howe can be deemed constitutional is if the search was based on consent.

*Id.* at 470, 39 S.W.3d at 470. In the case at bar, Ivy never testified he held a belief, reasonable or not, that Davis was armed and presently dangerous to justify a Rule 3.4 pat-down. The dissent contends that the lack of a subjective belief of danger to the officer does not invalidate an otherwise valid frisk. Even if this accurately describes the United States Supreme Court's interpretation of the Fourth Amendment, then the effect of *Howe v. State, supra,* can

only be to have broadened the protection for Arkansas citizens, requiring a subjective belief of danger, coupled with objective, "specific and articulable" facts that support the belief upon review.

An "officer must be able to point to particular facts from which he reasonably inferred that the person searched was armed and dangerous." *Peters v. New York,* 392 U.S. 40, 64 (1968). Ivy did testify to particular facts on which he based his decision to search; however, these facts, even with reasonable inferences drawn, cannot provide the requisite reasonable suspicion under Rule 3.4. The reasons articulated by Sergeant Ivy for the pat-down were that "[Davis] kept giving indications he was possibly fixing to run. He was very fidgety, his legs were visibly shaking. His carotid artery in his throat was throbbing." Ivy testified that he asked Davis whether he had weapons or drugs on him, but Ivy articulated no facts, such as a bulge or furtive movements, that gave rise to a belief that he or others were in danger. At another point in his testimony, Ivy stated, "I determined to do a pat-down search at that point because there were several individuals there with well documented drugs and weapons violations." Officer Ivy additionally testified that because of Davis' attitude, he was certain that Davis was lying or concealing something and that he "didn't feel comfortable with [Davis]."

Preparing to flee cannot objectively give rise to a reasonable fear that the suspect is armed and presently dangerous. The United States Supreme Court has held that fleeing upon sight of police can be a factor in finding reasonable suspicion to conduct a *Terry* stop. *Illinois v. Wardlow,* 528 U.S. 119 (2000). However, the Court was not analyzing the propriety of a *Terry* weapons frisk. Moreover, in this case, Davis did not flee; Ivy testified that he believed that Davis would "possibly" flee. I do not believe that possible flight gives rise to an objective fear of present danger to the officers. The fact that other persons in the vicinity had prior weapon and drug violations also cannot objectively give rise to a reasonable fear that Davis himself was armed and presently danger-ous. Ark. Code Ann. § 16-81-201 provides that "[t]his sub-chapter shall not be construed to: (1) Permit an officer to stop just

any passerby and search him, nor allow the search of any person merely because he has a criminal record[.]" If the frisk of Davis could not be solely based upon his criminal record, the frisk surely cannot be based solely upon the criminal record of those around him. Ivy's testimony that he did not feel comfortable with Davis possessed none of the requisite specific and articulable facts; it only supports a generalized, unsubstantiated feeling. Viewed in the totality, these proffered reasons cannot support a reasonable suspicion that Davis was armed and presently dangerous.

Arkansas Code Annotated section 16-81-203 provides factors that may be considered in determining whether reasonable suspicion existed such as, *inter alia*, the time of day, the incidence of crime in the area, demeanor of the suspect, the particular streets involved, and the gait and manner of the suspect. Ivy did not support his decision to frisk Davis for weapons based upon these factors, although some of these factors were present. He instead premised his decision on the observations that Davis was possibly going to run because he was fidgety, his legs were shaking, Davis's carotid artery was throbbing, there were other individuals there who had drug and weapons violations, and that he didn't feel comfortable with Davis. These reasons, even in the totality of the circumstances, cannot support a reasonable suspicion that Davis was armed and presently dangerous.

I note that there were factors in this case, such as the incidence of crime in the immediate neighborhood, the apparent effort by Davis to avoid the police, Davis reaching into his pocket and telling the officers that he would give them his "sh*t," that could provide some basis for reasonable suspicion. I agree with the dissent that a suspect reaching into his pocket in response to confrontation by police can present a present danger that would justify a weapons search; however, in the case at bar, this action was not a basis for the officer's decision to frisk Davis. The officer explicitly identified the factors upon which he based his decision to perform the weapons frisk, and they did not include the fact that Davis reached into his pocket and told the officers that he would give them his "sh*t." The reasons the officer gave to sup-

port his decision to search are not reasons that support a search under Rule 3.4.

In summary, it is my opinion that although the officers had reasonable suspicion under Rule 3.1 to detain Davis, they did not have reasonable suspicion that Davis was armed and presently dangerous on which to base a Rule 3.4 search. Therefore, I would reverse the trial court's denial of the motion to suppress and remand to the trial court for further proceedings.

OLLY NEAL, Judge, concurring. I concur in reversing this case. However, I write separately to simply express my concern about the standard of review the State has asked us to apply. The State has asked us "to make an independent determination based on the totality of the circumstances and view the evidence in a light most favorable to the State."

The standard of review for motions to suppress evidence obtained in warrantless searches is set forth in *Ornelas v. United States*, 517 U.S. 690 (1996), wherein the Supreme Court held that such cases should be reviewed *de novo*, and includes 1) "a determination of the historical facts" leading up to the stop or search, and 2) a decision whether these historical facts viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause.[1] *See id.* The Supreme Court further stated that:

> [A] reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers. *Id.*

More recently, in *United States v. Arvizu*, 534 U.S. 266 (2002), the Supreme Court reaffirmed that appellate courts must look at the "totality of the circumstances" of each case and consider all factors giving rise to an officer's basis for suspecting

---

[1] The Court characterizes the second part of this analysis as a mixed question of law and fact.

wrongdoing rather than evaluate and reject certain factors in isolation from the others. *See id.*

The often-repeated standard employed by Arkansas appellate courts can be found in *Owen v. State*, 75 Ark. App. 39, 53 S.W.3d 62 (2001). In that case, we stated:

> When we review a ruling on a motion to suppress, we make a independent determination based on the totality of the circumstances, *viewing the evidence in the light most favorable to the State*, and reverse only if the ruling is clearly against the preponderance of the evidence.

*Id.* at 44, 53 S.W.3d at 65. (Emphasis added.) This standard seems to have surfaced in 1990, in *Ryan v. State*, 303 Ark. 595, 798 S.W.2d 674 (1990), in which the court cited to *Holden v. State*, 290 Ark. 458, 721 S.W.2d 614 (1986), for the proposition. In *Holden*, the court stated:

> Was the trial court right? Was this seizure justified because some articles were in plain view? Was the look under the bed justified to insure the safety of the officers? Was the seizure justified? We think it was. *First, we view the facts on appeal most favorably to the appellee. Dix v. State, 290 Ark. 28, 715 S.W.2d 879 (1986).* Next we only overrule a trial court's decision if it is clearly wrong. Hicks v. State, 289 Ark. 83, 709 S.W.2d 87 (1986).

*Id.* at 472, 721 S.W.2d at 621. (Emphasis added). However, the problem with the *Holden* court's reliance upon *Dix v. State* is that the language in *Dix* was taken from an analysis of the sufficiency of the evidence to support the verdict, and did not deal with a motion to suppress:

> Our burden on appeal is to decide whether the jury's verdict is supported by substantial evidence. Mason v. State, 285 Ark. 479, 688 S.W.2d 299 (1985). *We view the evidence in the light most favorable to the jury's verdict. Westbrook v. State,* 286 Ark. 192, 691 S.W.2d 123 (1985).

*Dix v. State*, 290 Ark. at 33, 715 S.W.2d at 881. (Emphasis added).

The correct pre–1990 standard of review for motion to suppress was clearly set forth in *State v. Osborn*, 263 Ark. 554, 566 S.W.2d 139 (1978), where the supreme court stated:

> We have never stated our standard for appellate review of the trial court action granting or denying motions to suppress evidence obtained by means of a warrantless search. Although the substantial evidence rule has been followed by this court in nearly every instance of review of any fact finding by circuit judge, even on questions pertaining to admissibility of evidence, there has been at least one outstanding exception since our decision in *Harris v. State*, 244 Ark. 314, 425 S.W.2d 293, cert. den. 393 U.S. 941, 89 S.Ct. 308, 21 L.Ed.2d 278. We then decided that we would make an independent determination of the voluntariness of a confession as a basis for its admission into evidence, giving respectful consideration to the findings of the trial judge on the critical issue. This review was crystalized into a standard articulated in *Degler v. State*, 257 Ark. 388, 517 S.W.2d 515 and followed thereafter. See, e.g., *Smith v. State*, 259 Ark. 849, 537 S.W.2d 158. We have also extended it to at least one other situation pertaining to admissibility of evidence. See *Hammers v. State*, 261 Ark. 585, 550 S.W.2d 432.
>
> Pursuant to *Degler*, we make an independent determination based upon the totality of the circumstances, but will not set aside a trial judge's finding of voluntariness unless it is clearly against the preponderance of the evidence. In this approach, we have given considerable weight to the findings of the trial judge in the resolution of evidentiary conflicts. *Harris v. State, supra*. We must defer to the superior position of the trial judge to pass upon the credibility of witnesses. *Whitmore v. State*, 263 Ark. 419, 565 S.W.2d 733 (1978).
>
> The "clearly erroneous" rule (which is equated with the "clearly against the preponderance of the evidence" rule, see Degler), governs in many of the federal circuit courts of appeal. (Citations omitted.) There is also considerable state case law support for this type of review. (Citations omitted.)
>
> Since we feel that it is the better approach, and since it involves the same type of questions (often mixed questions of law and fact) that arise with reference to Suppression of confessions,

and the same placing of the burden of proof, we will review this case, and all those arising hereafter relating to a motion to suppress evidence obtained by a warrantless search, in the same manner we do when Voluntariness of a confession is the issue. This is similar to the approach taken in other jurisdictions (Citation omitted.)

*State v. Osborn*, 263 Ark. at 557-58, 566 S.W.2d at 140-41. However, the mandate to view the evidence in the light most favorable to the State has, since *Osborn*, supplanted the more logical requirement that we instead defer only to the trial court in matters of credibility and in resolving conflicts in the evidence.

Moreover, these two standards are in conflict in an important respect. The standard as corrupted by *Holden* and *Ryan, supra*, requires that in reviewing a challenge to the sufficiency of the evidence, "we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict . . . . We affirm a conviction if substantial evidence exists to support it." *Barnes v. State*, 346 Ark. 91, 97-98, 55 S.W.3d 271, 275-76 (2001). Clearly, this level of review is not compatible with the mandate of an independent, *de novo* review as required by *Ornelas v. United States, supra*; we should consider all of the evidence when determining where the preponderance of the evidence lies. Deferring to the trial courts in matters of credibility and giving due weight to the inferences drawn by them is not the same as viewing the evidence in the light most favorable to the State. Moreover, the Arkansas Supreme Court explicitly disavowed the substantial-evidence rule in the review of a trial court's decision or a motion to suppress in *Osborn, supra*.

As this court has previously noted in *McCormick v. State*, 74 Ark. App. 349, 48 S.W.3d 549 (2001), the supreme court was recently confronted with this conflict in our standard of review in *Stephens v. State*, 342 Ark. 151, 28 S.W.3d 260 (2000), but did not resolve it. The court expressly declined to address whether the standard that includes the "light-most-favorable-to-the-State" language was improper, and contrary to the holding in *Ornelas v. United States, supra*. However, the court stated:

> Without additional argument and citation of authority, we are unable to say our standard is in conflict with that set out in *Ornelas*. The Supreme Court directed reviewing courts to examine the factual findings of trial courts "only for clear error" and give "due weight to inferences drawn from those facts by resident judges"; our standard, as set forth in *Osborn*, requires us to do the same.

*Stephens v. State*, 342 Ark. at 160, 28 S.W.3d at 265.

The supreme court thus reaffirmed the standard set out in 1978 in *Osborn* without either addressing or even acknowledging that it differed in either form or substance from the recent version. Moreover, our courts have cited to both *Osborn* and other Arkansas cases employing the conflicting language in the same cases. *See Shaver v. State*, 332 Ark. 13, 963 S.W.2d 598 (1998).

JOHN MAUZY PITTMAN, Judge, dissenting. I dissent because I believe that the police officer had a reasonable suspicion to stop and question appellant, and that the officer could reasonably believe, on the basis of specific and articulable facts, that appellant was armed and dangerous.

I agree with Judge Bird's criticism of the majority's analysis of the initial stop. Although the majority opinion gives lip service to the totality-of-the-circumstances test, it is quite apparent that they are in fact engaging in precisely the sort of "divide and conquer" analysis forbidden by *United States v. Arvizu*, 122 S. Ct. 744 (2002). Certainly, the appellant's conduct in the present case was ambiguous; there may have been an innocent explanation for the appellant's engaging in a perceived hand-to-hand transaction in the yard of a vacant house in a high-crime area, especially known for drug activity, and for his nervous, evasive behavior upon noticing the police. However, this was equally so of the conduct justifying the stop in the seminal case of *Terry v. Ohio*, 392 U.S. 1 (1968), and *Terry* recognized that police officers could detain the individuals to resolve the ambiguity. *Illinois v. Wardlow*, 528 U.S. 119 (2000). I believe the police officer in the present case prop-

erly detained appellant to determine the cause of his ambiguous, but suspicious, behavior.

I disagree with Judge Bird's opinion that the pat-down for weapons in this case was unjustified because no one elicited from the police officer testimony that he actually suspected or feared that appellant was armed and dangerous. First, I am not convinced that the law requires affirmative proof of the officer's subjective belief. *Terry v. Ohio, supra,* and its progeny hold that the reasonableness of a police officer's conduct "must be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id.* at 21–22. "The test is an objective one, and thus the officer need not later demonstrate that he was in actual fear." W. LaFave and J. Israel, *Criminal Procedure* § 3.8(e), at 212 (2d ed. 1992). I think that this objective standard was met. Second, even if affirmative proof of the officer's subjective belief were required under *Terry,* such a requirement could be satisfied by inferences drawn from other evidence. Here, the circumstances with which the officer was faced, together with his testimony that the other men with appellant had documented weapons violations, and the officer's statement that he intended to pat down appellant "for weapons" permit one to reasonably infer that he believed appellant was armed and dangerous. Third, I believe that Judge Bird has erroneously overlooked the significance of appellant's having reached into his pocket just before the officer grabbed his hand to stop him from pulling anything out, patted him down, and found the crack pipe. It is impossible to overestimate the danger inherent in permitting a suspect to reach into a pocket, particularly in localities known for drug trafficking and in the presence of known weapons offenders. This was not a situation where appellant was yielding to a show of authority, because the officer had merely expressed his intention to pat appellant down for weapons, and had not asked him to empty his pockets or to give the officer anything. Although appellant perhaps felt he was yielding to the inevitable, it nevertheless remains that his action in reaching into

his pocket and withdrawing an item was considerably in excess of anything the officer had expressed an intent to do or had requested, and was inherently threatening to the police officer. Consequently, the fact that appellant reached into his pocket and began to withdraw an unknown item cannot be disregarded in determining whether a protective search was reasonable because the search provision of the Fourth Amendment was not implicated until the frisk actually took place. *See California v. Hodari D.*, 499 U.S. 621 (1991).[1]

From my independent review of the totality of the circumstances presented in this case, after giving due deference to the trial court's superior position to determine the historical facts, I think that the officer's stop and frisk of appellant were supported by the required reasonable suspicion.[2]

---

[1] It should be noted that appellant does not argue that the officer's search exceeded the scope of a permissible "pat down" or "frisk." He contends only that the officer lacked reasonable suspicion to stop him or pat him down. In other words, he treats the officer's discovery of the pipe as resulting only from a *Terry* pat down. Therefore, I approach the case in the same manner.

[2] I agree that the standard by which we review decisions on motions to suppress cannot rightly include a requirement that the evidence be viewed in the light most favorable to the appellee. I believe that viewing the evidence in the light most favorable to either party is not only antithetical to the concept of an independent examination/totality of the circumstances/clearly erroneous standard of review, but that it is, in fact, logically impossible to so view the evidence and at the same time engage in the stated standard of review. Several early cases reveal that, among other things, viewing the evidence in the light most favorable to the prevailing party means that we consider only that evidence that tends to support the decision below and that we do not weigh it against evidence favorable to the appellant. *See, e.g., Duncan v. State*, 196 Ark. 171, 117 S.W.2d 36 (1938); *Morgan v. State*, 189 Ark. 981, 76 S.W.2d 79 (1934); *Begley v. State*, 180 Ark. 267, 21 S.W.2d 172 (1929); *see also McGehee Co. v. Fuller*, 169 Ark. 920, 277 S.W. 39 (1925). More recent cases continue to so indicate. *See, e.g., Wilson v. State*, 320 Ark. 707, 898 S.W.2d 469 (1995); *Tisdale v. State*, 311 Ark. 220, 843 S.W.2d 803 (1992); *Coon v. State*, 76 Ark. App. 250, 65 S.W.3d 889 (2001).

The Arkansas Supreme Court first decided to independently determine the voluntariness of confessions by examining the entire record in *Harris v. State*, 244 Ark. 314, 425 S.W.2d 293 (1968). There, the court specifically noted that "the weight ordinarily given to a factual determination by the trial judge cannot be applied," but that the appellate court must "examine the entire record." *Id*. at 320. In *Degler v. State*, 257 Ark. 388, 392, 517 S.W.2d 515 (1974), the supreme court reaffirmed the *Harris* standard and explicitly added that the trial judge's finding will not be set aside on appeal unless it is clearly against

the preponderance of the evidence. In *State v. Osborn,* 263 Ark. 554, 566 S.W.2d 139 (1978), the supreme court adopted the same standard as appropriate for determining the correctness of decisions on motions to suppress evidence obtained by means of allegedly illegal searches. There, the court stated that, although it would defer to the superior position of the trial court to pass upon the credibility of the witnesses, the substantial evidence standard of review is inapplicable. *Id.* at 558.

Conspicuous by its absence from the seminal cases of *Harris, Degler,* and *Osborn* is any requirement or direction that the evidence be viewed in the light most favorable to either party. Indeed, it was not until eighteen years after the decision in *Harris* that the supreme court first stated that the evidence should be viewed in the light most favorable to the appellee when reviewing a trial court's decision on a motion to suppress evidence. *See Holden v. State,* 290 Ark. 458, 721 S.W.2d 614 (1986). And *Holden* relied only on *Dix v. State,* 290 Ark. 28, 715 S.W.2d 879 (1986), which was a sufficiency of the evidence case governed by the substantial evidence standard and which did not state the proposition.

My research indicates that, beginning with *Holden,* each case that recites the "light most favorable" rule as applicable to the review of suppression decisions can be traced directly back to simple mistakes. It appears that each case making the statement in question has erroneously sprung from one of eight cases: *Dix v. State,* 290 Ark. 28, 715 S.W.2d 879 (1986) (as noted, a sufficiency case that did not state the proposition); *David v. State,* 295 Ark. 131, 748 S.W.2d 117 (1988) (a sufficiency case that did not state the proposition); *Morris v. State,* 302 Ark. 532, 792 S.W.2d 298 (1990) (does not state the proposition); *Moore v. State,* 303 Ark. 1, 791 S.W.2d 698 (1990) (does not state the proposition); *State v. Villines,* 304 Ark. 128, 801 S.W.2d 29 (1990) (stated the proposition but cited nothing); *Moore v. State,* 304 Ark. 257, 801 S.W.2d 638 (1990) (stated that the evidence was being viewed in the light most favorable to the State, but cited nothing for the proposition and conspicuously failed to recite any portion of the familiar independent determination/ totality of the circumstances/clearly erroneous standard of review); *Smith v. State,* 1 Ark. App. 241, 614 S.W.2d 527 (1981) (stated the proposition but cited nothing; case not subsequently cited); *Cardozo v. State,* 7 Ark. App. 219, 646 S.W.2d 705 (1983) (stated that the evidence was being viewed in the light most favorable to the State, but cited nothing in support; case not subsequently cited for this proposition).